### A10A0646. C. INGRAM COMPANY et al. v. PHILADELPHIA INDEMNITY INSURANCE COMPANY.
(694 SE2d 181)

BLACKBURN, Presiding Judge.

In this insurance coverage action, C. Ingram Company and Chester Ingram (collectively "Ingram"), as assignees of the rights of a law firm's professional liability policy, sued the law firm's insurer, Philadelphia Indemnity Insurance Company ("PIIC"), for breach of contract, alleging that PIIC wrongfully denied coverage to the law firm for a legal malpractice claim that Ingram had brought against the law firm. Following a grant of summary judgment in favor of PIIC, Ingram appeals, arguing that genuine issues of material fact remain as to whether PIIC properly relied on an exclusion in the policy to deny coverage and as to whether the law firm's insurance application contained misrepresentations that entitled PIIC to rescind the policy. For the reasons set forth below, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); Britt v. Kelly & Picerne, Inc.[1] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Punctuation omitted.) McCall v. Couture.[2]

So construed, the record shows that in July 2001, Ingram retained a law firm to file an action to foreclose on a mechanic's lien in the amount of $651,364.37 against Johns Manville Sales Corporation ("Johns Manville"). Under OCGA § 44-14-361.1 (a) (3), an action to foreclose on such a lien had to be filed within one year of the

[1] Britt v. Kelly & Picerne, Inc., 258 Ga. App. 843 (575 SE2d 732) (2002).
[2] McCall v. Couture, 293 Ga. App. 305 (666 SE2d 637) (2008).

date it became due. Ingram's lien had become due on August 24, 2000, and thus, any action to foreclose on that lien had to be filed on or before August 24, 2001. However, the law firm retained by Ingram did not file suit until November 6, 2001. Later that month, after becoming aware that the action had not been timely filed, Ingram, through other counsel hired to arbitrate the matter, informed the law firm that its failure would subject it to a malpractice claim. On December 12, 2001, Johns Manville filed a motion to dismiss Ingram's foreclosure action on the ground that it had been filed after the statutory deadline. The law firm did not file a response, and on February 5, 2002, the trial court granted Johns Manville's motion.

In 2003, the law firm that had been retained by Ingram obtained a professional liability insurance policy from PIIC, which became effective on May 15 of that same year. The policy covered "CLAIMS first made against INSURED during the POLICY PERIOD and reported to [PIIC] in writing during the POLICY PERIOD or within sixty (60) days thereafter. . . ." The policy also contained several exclusions, one of which provided that the policy did not apply to:

> B. any CLAIM arising out of any WRONGFUL ACT or PERSONAL INJURY occurring prior to the effective date of this policy if a) the matter had previously been reported to any insurance company or b) if the INSURED at the effective date knew or could have reasonably foreseen that such WRONGFUL ACT or PERSONAL INJURY might be expected to be the basis of a CLAIM; provided, however, that subsection b) does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT or PERSONAL INJURY might be expected to be the basis of a CLAIM.

On August 7, 2003, Ingram filed a legal malpractice claim against the law firm based on its failure to timely file Ingram's foreclosure action against Johns Manville. Two weeks later, the law firm tendered the defense of Ingram's lawsuit to PIIC, pursuant to the professional liability policy. In a letter dated August 29, 2003, PIIC acknowledged the claim and agreed to defend the law firm, subject to a reservation of its rights while it determined its obligations under the policy. In that same letter, PIIC noted that Ingram's complaint indicated that the law firm was informed as early as November 2001 that Ingram intended to file a malpractice claim against it and that the law firm's knowledge of that potential lawsuit prior to the effective date of the liability policy could result in denial of coverage pursuant to Exclusion B of the policy.

Thereafter, PIIC defended the law firm in Ingram's malpractice action while conducting an investigation to determine its obligations under the policy. In the meantime, however, the law firm ceased paying its policy premiums, and as a result, in January 2004, PIIC cancelled the policy. Despite the cancellation, PIIC continued to defend the law firm until June 24, 2004, when PIIC notified the law firm that it had concluded that Ingram's malpractice claims were excluded from coverage under Exclusion B of the policy because the law firm was aware of those potential claims prior to the effective date of the policy. Given this exclusion, PIIC also notified the law firm that it was withdrawing its defense.

On August 26, 2005, the law firm consented to a judgment in favor of Ingram in the amount of $651,364.37 plus interest. In that consent judgment, Ingram agreed that it would not collect on the judgment in exchange for an assignment of the law firm's rights against PIIC. On September 6, 2007, Ingram, as assignees of the law firm's rights, sued PIIC for breach of contract and declaratory judgment, alleging that PIIC improperly excluded Ingram's claims against the law firm from coverage under its policy. PIIC filed an answer and later moved for summary judgment, arguing that it properly denied coverage, pursuant to Exclusion B of the policy. The trial court held a hearing on PIIC's motion, after which it granted summary judgment in favor of PIIC. This appeal followed.

1. Ingram contends that the trial court erred in granting summary judgment in favor of PIIC, arguing that genuine issues of material fact remain as to whether PIIC properly relied on Exclusion B of the insurance policy to deny coverage in light of the fact that it cancelled the policy before relying on that exclusion. We disagree.

"In this [S]tate, insurance contracts are governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning." (Punctuation omitted.) *Turner v. Gateway Ins. Co.*[3] "When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties." (Punctuation omitted.) *Varsalona v. Auto-Owners Ins. Co.*[4] "The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide." (Punctuation omitted.) *McGregor v. Columbia Nat. Ins. Co.*[5] See *Turner,* supra, 290 Ga. App. at 739; OCGA § 13-2-1.

---

[3] *Turner v. Gateway Ins. Co.,* 290 Ga. App. 737, 739 (660 SE2d 484) (2008).

[4] *Varsalona v. Auto-Owners Ins. Co.,* 281 Ga. App. 644, 646 (637 SE2d 64) (2006).

[5] *McGregor v. Columbia Nat. Ins. Co.,* 298 Ga. App. 491, 496 (2) (b) (680 SE2d 559) (2009).

An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. Where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.

(Citation and punctuation omitted.) *Garland, Samuel & Loeb, P.C. v. American Safety Cas. Ins. Co.*[6] Furthermore,

an insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. Though exclusions in insurance policies are strictly construed against the insurer, one that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

(Punctuation omitted.) *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*[7]

Here, Exclusion B of the professional liability policy issued to the law firm by PIIC unambiguously excludes coverage for any claim arising out of any wrongful act occurring prior to the effective date of the policy, if the law firm at the effective date knew or could have reasonably foreseen that such wrongful act might be expected to be the basis of a claim. The undisputed facts show that Exclusion B excluded coverage of Ingram's malpractice claim against the law firm. As previously noted, in November 2001, shortly after learning that the action to foreclose on the lien had not been timely filed, Ingram, through other counsel, informed the law firm that its failure would subject it to a malpractice claim. On December 12, 2001, Johns Manville filed a motion to dismiss Ingram's foreclosure action. Less than two months later, the trial court granted that motion based on its finding that the action had not been timely filed. Thus, the undisputed evidence shows that prior to the May 15, 2003 effective date of the policy, the law firm knew or could have reasonably foreseen that Ingram could bring a malpractice claim against it. Accordingly, the trial court did not err in finding that Ingram's claim

---

[6] *Garland, Samuel & Loeb, P.C. v. American Safety Cas. Ins. Co.*, 287 Ga. App. 254, 256 (651 SE2d 177) (2007).

[7] *Fidelity Nat. Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 275 Ga. App. 55, 57 (619 SE2d 704) (2005).

was excluded under the policy. See *Continental Cas. Co. v. H.S.I. Financial Svcs.;*[8] *Fidelity Nat. Title Ins. Co. of N.Y.*, supra, 275 Ga. App. at 60.

Nevertheless, Ingram argues that PIIC's cancellation of the policy in January 2004, due to the law firm's failure to pay premiums, abrogated the policy entirely and thus questions of fact remain as to whether PIIC could rely on any of the policy's exclusions when it withdrew its defense in June of that year. This contention is without merit. The cancellation of an insurance policy has "no effect on a right or action which had previously accrued under the policy." 3 Holmes' Appleman on Insurance 2d, § 16.7, p. 330 (1998). Here, PIIC continued to defend the law firm after cancelling the policy, and its cancellation was irrelevant to its later determination that Ingram's malpractice claim against the law firm was excluded from coverage pursuant to Exclusion B of the policy.

2. Ingram further contends that genuine issues of material fact remain as to whether the law firm's insurance application contained misrepresentations that entitled PIIC to rescind the professional liability policy. However, Ingram's contention is without merit as it confuses the concept of rescission with the denial of coverage based on an exclusion contained in the policy.

Under OCGA § 33-24-7, "[m]isrepresentations, omissions, concealment of facts, and incorrect statements" made by an insured during negotiations for an insurance policy will bar recovery under that policy where they were "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer" or where "[t]he insurer in good faith would . . . not have issued the policy or contract . . . if the true facts had been known to the insurer. . . ." OCGA § 33-24-7 (b) (2), (b) (3). See *Pope v. Mercury Indem. Co. of Ga.*[9] Here, although PIIC informed the law firm that it had sufficient grounds to rescind the policy based on material misrepresentations in the insurance application, PIIC never in fact rescinded the policy. Instead, as discussed at length in Division 1, supra, PIIC denied coverage for Ingram's malpractice claim based on an unambiguous exclusion contained in the policy. Ingram's contention is thus belied by the record. Accordingly, the trial court did not err in granting summary judgment in favor of PIIC.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 7, 2010.

---

[8] *Continental Cas. Co. v. H.S.I. Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996).
[9] *Pope v. Mercury Indem. Co. of Ga.*, 297 Ga. App. 535, 537 (1) (677 SE2d 693) (2009).

*Kathryn J. Jaconetti*, for appellants.
*McKenna, Long & Aldridge, Anthony W. Morris*, for appellee.