**June 30, 2017**

# In the Court of Appeals of Georgia

A17A0453. AMERICAN SAFETY INDEMNITY CO. v. STO
    CORP.

MCMILLIAN, Judge.

Sto Corp. ("Sto") filed suit against American Safety Indemnity Company

("ASIC"), asserting breach of contract, declaratory judgment, and bad faith claims

arising from ASIC's refusal to defend and indemnify Sto for claims related to stucco

products that Sto had supplied to two building projects.[1] ASIC now appeals the trial

court's order granting summary judgment to Sto on its breach of contract and

declaratory judgment claims and on ASIC's counterclaim for rescission and denying

summary judgment to ASIC on Sto's claim for bad faith. We reverse the denial of

---

[1] Sto amended its original complaint to add the claim of bad faith under OCGA
§ 33-4-6.

summary judgment to ASIC on Sto's claim for bad faith, but affirm in all other respects as set forth below.

1. "We review a grant or denial of summary judgment de novo, construing the evidence in the light most favorable to the nonmovant." (Citation omitted.) *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 365 (797 SE2d 238) (2017). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). So viewed, the record shows that Sto manufactures and sells exterior cladding products for residential and commercial construction, including stucco products and coating finishes. ASIC issued two sets of insurance policies to Sto. The first, issued annually from September 1, 2009, to September 1, 2012, were policies providing coverage for certain stucco products (the "Stucco Policies"). The second, issued annually from September 1, 2010, to September 1, 2012, were policies providing coverage for Sto's coating products, including a product called Powerflex (the "Coating Policies"). This case arises from ASIC's eventual refusal to defend and indemnify Sto in two separate lawsuits filed against Sto regarding products it supplied in residential building projects.

(a) *Crescent Shores.* Crescent Shores is a residential complex in South Carolina that was completed in 2004. On November 5, 2010, Sto notified ASIC of a potential claim related to the Crescent Shores complex. David Paight, ASIC's assigned adjuster, responded via letter dated November 18, 2010, requesting additional information and asserting that ASIC's "investigation and evaluation" was to be conducted under a reservation of rights. In January 2011, the Crescent Shores homeowner's association filed a lawsuit against Sto and others (the "Crescent Shores Suit"), alleging that Sto's stucco system had started to delaminate and fall off. On May 20, 2011, ASIC notified Sto via letter that it was denying coverage, which described in detail various bases under the policy for denying coverage.

However, Paight testified at deposition that ASIC later re-evaluated its position and agreed on September 28, 2011 to defend the claim, thereafter taking control of the litigation.[2] Paight also confirmed at his deposition that his claims notes indicated: "ASIC will provide a defense for this matter. Will update coverage position to [Sto] and their broker." And although Paight's claims notes also indicated "issued N. I. R.O.R.," which he explained stands for "named insured reservation of rights to

_____

[2] The parties do not point to any letter dated September 28, 2011 notifying Sto that ASIC would defend the claim, and we have found none.

defend," he had no recollection of whether he issued a reservation of rights in the Crescent Shores Suit, nor did he recall ever telling anyone at Sto that ASIC was defending Sto subject to a reservation of rights. Paight's records also included a letter addressed to Sto, dated September 20, 2011, which contained a reservation of rights (the "Crescent Shores Reservation of Rights Letter"), but Sto claimed that, despite searching its paper and electronic files, it had no record of ever receiving that letter.[3] ASIC continued to defend the Crescent Shores Suit until April 16, 2013 when it ultimately withdrew coverage, asserting that Sto had misrepresented when it first received notice of a claim for the Crescent Shores complex.

(b) *Canal Side Lofts*. Canal Side Lofts is a residential complex in Texas completed in 2006. In April 2011, Sto tendered to ASIC a lawsuit filed by the owner of Canal Side Lofts against Sto and other defendants asserting claims arising from the alleged blistering and delaminating of the stucco finish ("Canal Side Suit"). On May 18, 2011, ASIC responded with a letter seeking additional information and stating that ASIC would be conducting its "investigation and evaluation" under a full

---

[3] Upon later learning the ASIC claimed it had sent Sto a reservation of rights letter, Sto looked through its documents and spoke with its insurance broker and its outside counsel to see if anyone else had received a copy of the letter. No one had received a copy.

reservation of rights.[4] On June 16, 2011, Sto provided ASIC with documents detailing the history of the Canal Side project. On August 1, 2011, after reviewing these materials, ASIC denied coverage for the claim on the basis that Sto was aware of problems with the Canal Side Lofts in 2008, prior to the applicable policy period. This letter also set out in detail the grounds for denying coverage under the policy.

Sto again responded, explaining that it had not received notice of the claim prior to the applicable policy period and enclosing documentation to support its assertion. Subsequently, ASIC reversed its denial and agreed to take over the defense of the Canal Side Suit under the 2009 Stucco Policy. An August 20, 2012 email sent by Paight indicates that this determination was conveyed orally to both Sto and Sto's outside counsel. Several months later, Paight prepared a detailed letter regarding ASIC's agreement to defend Sto that included a reservation of rights (the "Canal Side Reservation of Rights Letter").

However, as in the Crescent Shores Suit, Sto contends, despite a search of its electronic and paper documents, that it did not receive this letter.[5] In his deposition,

---

[4] Paight conceded that this letter did not reserve ASIC's rights regarding defense of the claim.

[5] Again, upon learning the ASIC claimed it had sent a reservation of rights letter, Sto looked through its documents and spoke with its insurance broker and its

Paight explained that in this instance, after drafting the letter, he sent it to a system called "assistant tasks," where it would have been assigned to an administrative assistant to mail. But he has no way of knowing either who received the assignment or whether that person actually mailed the letter. Paight also deposed that he does not recall whether he orally conveyed ASIC's reservation of rights to Sto,[6] and Sto claims that it received no such oral message from ASIC. ASIC then continued to defend Sto throughout the trial, which on June 13, 2013 resulted in a jury verdict of $918,000 in favor of the plaintiff against Sto. The morning after the verdict, Paight obtained authority to engage coverage counsel to evaluate whether ASIC would be able to withdraw coverage at that point. Then, on July 3, 2013, ASIC notified Sto that it was denying coverage for the Canal Side Suit.

(c) *This Litigation.* In September 2013, Sto filed suit against ASIC, asserting breach of contract, declaratory judgment, and bad faith claims. ASIC counterclaimed, seeking to rescind the policies based on alleged misrepresentations Sto made in its policy applications regarding the loss history of Sto's Powerflex product and the

outside counsel to see if anyone else had received a copy of the letter. No one had received a copy.

[6] He also conceded that no else at ASIC would have conveyed a reservation of rights to Sto.

6

introduction of a reformulated coating product. After the parties filed cross-motions for summary judgment, the trial court issued an order granting Sto's motion on its claims for breach of contract and declaratory judgment after finding that ASIC failed to properly convey a reservation of rights and was therefore estopped from denying coverage as a matter of law. In the same order, the trial court also granted summary judgment to Sto on ASIC's rescission counterclaim, finding that Sto did not make any misrepresentations in its applications and that ASIC waived its right to rescind the policies. And finally, the trial court denied ASIC's motion for summary judgment on Sto's claim for bad faith, finding that questions of fact exist as to whether ASIC denied the Crescent Shore and Canal Side claims in bad faith. This appeal followed.

2. In its first enumeration of error, ASIC asserts that the trial court erred in granting summary judgment to Sto on its contract and declaratory judgment claims because ASIC's "multiple reservations of rights" issued prior to the denial of coverage were sufficient as a matter of law to avoid estoppel.[7] When an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured, the insurer has three options under Georgia

---

[7] ASIC does not seek a finding of noncoverage under the terms of the policies, and we do not reach this issue.

7

law. "First, the insurer can agree to defend the claim, thereby waiving its policy defenses and claims of non-coverage." (Citation omitted.) *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 404 (1) (730 SE2d 413) (2012). On the other end of the spectrum, "the insurer can deny coverage and refuse to defend [the insured], leaving policy defenses open for future litigation." (Citation omitted.) Id. Or, under the third option, the insurer can defend the claim under a "reservation of rights." Id. at 404-05 (1). A reservation of rights is a term of art designed to allow an insurer to provide a defense while still preserving the option to later litigate and ultimately deny coverage. Id. at 405 (1).

Where an insurer fails to properly reserve its rights, it may be estopped from later denying coverage. It is well established under Georgia law that

> risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, may be subject to the doctrine where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage[.]

(Citations omitted.) *Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318 (319 SE2d 445) (1984). "The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the

8

insurer's position." (Citations and punctuation omitted.) *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 287 Ga. 149, 152 (1) (695 SE2d 6) (2010).

In determining whether a particular notice is sufficient, our Supreme Court has explained that, "[a]t a minimum, the reservation of rights must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." (Citation and punctuation omitted.) *World Harvest Church*, 287 Ga. at 152 (1). "The reservation of rights should also inform the insured of the specific basis for the insurer's reservations about coverage." (Citation and punctuation omitted.) Id. (reservation of rights "cannot be only a statement of future intent"). Furthermore, "the reservation must be unambiguous; if it is ambiguous, the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured." (Citation and punctuation omitted.) Id. at 152-53 (1).

We focus our analysis then on the timing and content of the various communications ASIC contends constitute a reservation of rights. It is undisputed that ASIC, following its initial investigation into both the Crescent Shores and Canal Side Suits, denied coverage. The purpose of a reservation of rights is "to protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations

9

under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation." (Citation and punctuation omitted.) *Hoover*, 291 Ga. at 406 (1). "Thus, a reservation of rights is only available to an insurer who undertakes a defense while questions remain about the validity of the coverage." Id. at 405 (1). For this reason, an insurer cannot both deny a claim and reserve its right to assert other defenses later. Id. Rather, "[w]hen an insurer is presented with a notice of a claim and demand for a defense, the proper and safe course of action is to enter upon a defense under a reservations of rights and then proceed to seek a declaratory judgment in its favor." (Citation and punctuation omitted.) Id.

Here, ASIC points to several instances where it reserved its rights before it denied coverage in the Crescent Shores and Canal Side litigation. However, under *Hoover*, ASIC cannot both deny the claims and assert a reservation of rights, and we fail to see how a previous reservation of rights issued while ASIC was still investigating the claims would remain effective post-denial. *Hoover*, 291 Ga. at 405 (1). As our Supreme Court has explained, where an insurer has denied coverage for the claim at issue, the insurer is no longer "uncertain nor insecure in regard to its rights, status or legal relations." *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109 (586 SE2d 228) (2003) (declaratory judgment action not available where insurer

10

denied coverage). See also *Hoover*, 291 Ga. at 406 (1) ("reservation of rights does not exist so that an insurer who had *denied coverage* may continue to investigate to come up with additional reasons on which the denial could be based if challenged") (emphasis in original).

In addition, to the extent ASIC asserts that Paight, who "could not recall the specifics or timing of the conversations," testified that "coverage issues" were discussed with Sto on a quarterly basis, we find this insufficient to have unambiguously conveyed a reservation of rights to Sto following ASIC's denial of coverage.[8] "[A] mere allegation that the insurer contended that the insured was not covered by the policy, without more, does not show any reservation on its part of a right to insist that the coverage of the policy was not extended to him." (Citation and punctuation omitted.) *World Harvest Church*, 287 Ga. at 152 (1). Moreover, we note that

> [e]ven an insured who has actual knowledge of the contents of his policy
> and the possibility that the company might deny coverage when a claim
> is first asserted reasonably relies upon the provision of a defense without

---

[8] We acknowledge, however, that "[a]lthough written notification is preferable," the equivalent oral notification, where it otherwise meets the minimum requirements under Georgia law, is generally accepted. *World Harvest Church,* 287 Ga. at 152 (1).

> reservation of rights as an indication that the company has waived the coverage issue.

(Citation and punctuation omitted.) Id. at 153 (1). Accordingly, this enumeration of error fails.

3. In the alternative, ASIC asserts that the trial court erred in granting summary judgment to Sto on its claims for breach of contract and declaratory judgment because a genuine issue of fact remains regarding whether ASIC later reserved its rights via the Crescent Shores and Canal Side Reservation of Rights Letters. As noted above, Sto maintains that neither it, nor its agent or outside counsel, ever received these letters.

We turn first to the Canal Side Suit. Regardless of whether ASIC actually mailed the Canal Side Reservation of Rights Letter, such an attempt made several months after reversing its denial of coverage was not timely. An insurer must act reasonably promptly in reserving its rights. See, e.g., *Ga. Interlocal Risk Mgmt. Agency*, 337 Ga. App. 340, 348 (2) (788 SE2d 74) (2016). And "where, as here, an insurer assumes and conducts an initial defense without effectively notifying the insured that it is doing so with a reservation of rights, the insurer is deemed estopped from asserting the defense of noncoverage regardless of whether the insured can show

12

prejudice." *World Harvest Church*, 287 Ga. at 156 (2). "The undertaking to defend may be of no value, but of great danger, to the insured if, after abandoning all control of the suit, he may yet be liable for a judgment against him." (Citation and punctuation omitted.) Id.

With respect to the Crescent Shores Suit, the Reservation of Rights Letter was dated several days before ASIC reversed course and agreed to provide coverage. Paight deposed that he had no recollection of either addressing or putting the Crescent Shores Reservation of Rights Letter in the mail but that his normal practice would have been to print the letter out, put it an envelope, and then put it into the company's outgoing mail. He then stated:

> [a]nd then someone else would have actually gotten the postage on it and taken it to the Post Office. Or I guess they would have picked them up. I don't really know how the mail was done.

ASIC argues that this testimony is sufficient to create a genuine issue of material fact regarding whether the letter was sent to Sto. We disagree.

"No presumption arises that a letter has been received in the mail unless it is shown that the letter (1) was written; (2) was properly addressed to the party; (3) contained the correct postage; and (4) was duly mailed in the United States Post

13

Office." (Citation and punctuation omitted.) *Jones v. City of Willacoochee*, 299 Ga. App. 741, 743 (683 SE2d 683) (2009). Even construing Paight's testimony in favor of ASIC, it is clear that there is no evidence that he properly addressed the envelope, that either he or another individual added the correct postage, or that he or another individual placed the letter with the United States Post Office. Paight's testimony established only his general practice of printing such letters and placing them in an envelope. See *Jones v. O'Day*, 303 Ga. App. 159, 163 (692 SE2d 774) (2010) (to the extent a party's testimony amounts to no more than an unsupported conclusion, it cannot be considered in ruling upon a summary judgment motion). Therefore, ASIC has failed to create a genuine issue of material fact regarding whether the Crescent Shores Reservation of Rights Letter was sent to or received by Sto. See id.; cf. *Burnside v. GEICO Gen. Ins. Co.*, 309 Ga. App. 897, 901 (2) (714 SE2d 606) (2011) (sufficient evidence of mailing where insurer submitted affidavit from output manger for its national print mail center who explained precise method of providing sufficient postage and mailing receipts). Accordingly, ASIC failed to effectively issue a

reservation of rights and is therefore estopped from asserting noncoverage.[9] See *World Harvest Church,* 287 Ga. at 153 (2).

4. In its third enumeration of error, ASIC asserts that the trial court erred in granting summary judgment in favor of Sto on ASIC's counterclaim for rescission. "In order to void a policy of insurance for a misrepresentation in the application, the insurer must show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk." (Citation and punctuation omitted.) *Jackson Nat. Life Ins. Co. v. Snead*, 231 Ga. App. 406, 410 (3) (a) (499 SE2d 173) (1998); see also OCGA § 33-24-7 (b). The issue of materiality is ordinarily a question for the jury. See *Lively v. Southern Heritage Ins. Co.*, 256 Ga. App. 195, 196 (1) (568 SE2d 98) (2002).

In addition, under Georgia law, an insurer seeking to rescind a policy must make "[a]n announcement of the intent to rescind the contract . . . in a timely fashion, as soon as the facts supporting the claim for rescission are discovered." *Holloman v D. R. Horton, Inc.*, 241 Ga App. 141, 146 (3) (524 SE2d 790) (1999). Moreover, after

---

[9] Moreover, as noted in Division 2, ASIC is unable to rely on any oral reservation of rights because Paight could not recall the specifics or timing of his conversations with Sto and knew only that "coverage issues" were discussed. See *World Harvest Church*, 287 Ga. at 152 (1) (mere allegation that insurer contended insured was not covered by policy is not sufficient to show a reservation of rights).

announcing its intent, the insurer "must adhere to the intent to rescind and may waive any claim for rescission by failing to do so." Id. And "[o]nce a claim for rescission is waived, [it] cannot be revived." Id. (courts are quick to seize upon any waiver of a forfeiture).

Here, ASIC bases its claim for rescission on responses Sto submitted when it applied for the Stucco and Coatings Policies, which ASIC now claims misrepresented whether Sto had notice of any claims related to its products. In the stucco applications, Sto stated that there were "no claims to date." The application also included the option to attach a "loss summary," which Sto provided. ASIC concedes that Sto also later amended its application to give notice of a lawsuit filed during the application process and tendered to Sto's prior insurance carrier. As part of the application process, Sto also responded that it had no new products planned.

Based on these representations, ASIC issued the 2009 Stucco Policy. In 2010, Sto applied to renew its Stucco Policy and also applied for a separate policy for its coating products, including Powerflex. In the Coating Policy application, Sto again opted to attach a loss summary, which disclosed a claim made under its prior insurance carrier. Again, as part of the application process, Sto completed a product questionnaire. Sto checked "No" when asked whether it had recently discontinued or

was considering discontinuing any of its products. ASIC then renewed Sto's Stucco Policy and issued the first Coatings Policy. These policies were renewed each year through 2012.

ASIC claims, however, that it later learned Sto had received numerous claims of blistering as well as customer demands that Sto replace or repair its products.[10] According to ASIC, it did not discover the extent of Sto's misrepresentations until the Canal Side Lofts trial in June 2013 where the evidence purportedly showed that Sto had a history of claims and knew that the source of the problem was a bad polymer in its Powerflex product.

Even assuming arguendo for purposes of summary judgment that Sto made material misrepresentations on the insurance applications and that ASIC "did not understand the extent or significance of the misrepresentations" until June 2013, we find that summary judgment is required for Sto on this issue. ASIC offers no explanation for why it failed to announce its intent to rescind the Stucco and Coating Policies[11] until December 2013, in response to Sto's suit filed against it. Georgia law

---

[10] ASIC also contends Sto failed to disclose the nonrenewal of its previous coating products insurance policy.

[11] Sto asserts that the two claims at issue here are covered under the 2010 Stucco Policy.

17

is clear that "if a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it." *Minnesota Lawyers Mut. Ins. Co. v. Gordon*, 315 Ga. App. 72, 74 (726 SE2d 562) (2012). Here, upon learning of the "extent or significance" of the alleged misrepresentations, ASIC did not at once announce its intent to rescind the policies, but rather chose to issue a denial of coverage. In addition, Paight testified in August 2014 that ASIC continued to treat the Policies as if they remained in force with respect to other claims being handled under those Policies. Thus, pretermitting whether Sto's applications included material misrepresentations,[12] the trial court correctly concluded that ASIC has waived this defense as a matter of law. See *C. Ingram Co. v. Philadelphia Indem. Ins. Co.*, 303 Ga. App. 548, 552 (2) (694 SE2d 181) (2010) (where insurer did not rescind policy but instead denied coverage, trial court did not err in granting summary judgment to insured). See also *Gordon*, 315 Ga. App. at 76 (an insurer, having taken a firm position as to its rights, is not entitled to declaratory judgment for purpose of seeking confirmation of its actions); *Thompson*

---

[12] We also note that, even if Sto made material misrepresentations in the Coating Policies applications, there is no evidence that Sto's representations regarding its coating products in those applications would serve as grounds to also void the Stucco Policies.

18

*v. Permanent Gen. Assur. Corp.*, 238 Ga. App. 450, 452 (519 SE2d 249) (1999) (insurer waives defense that misrepresentation voided policy if it treats policy as valid and binding). Accordingly, the trial court did not err in granting summary judgment to Sto on ASIC's counterclaim.

5. In its final enumeration of error, ASIC asserts the trial court erred in denying summary judgment on Sto's bad faith claim because (1) Sto failed to comply with the strict requirements of OCGA § 33-4-6 and (2) a reasonable basis existed to deny the claims. Pretermitting whether Sto complied with the requirements of OCGA § 33-4-6, we find that ASIC had a reasonable factual and legal basis for denying coverage such that bad faith penalties are not allowed.

OCGA § 33-4-6 provides the exclusive remedy for an insured's claim of bad faith failure to pay policy proceeds. See *Anderson v. Ga. Farm Bureau Mut. Ins.*, 255 Ga. App. 734, 737 (2) (566 SE2d 342) (2002). Under this statute, "an insurer is subject to imposition of a penalty and attorney fees if it refuses in bad faith to pay a covered loss within 60 days after a demand has been made by the holder of the policy." (Citation and punctuation omitted.) *Jones v. State Farm Mut. Automobile Ins. Co.*, 228 Ga. App. 347, 350 (3) (491 SE2d 830) (1997). To prevail on its claim for bad faith, Sto must prove that (1) the claims are covered; (2) a demand for payment

19

was made against ASIC within 60 days prior to filing suit; and (3) ASIC's failure to pay was motivated by bad faith. See *Bayrock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007). Because OCGA § 33-4-6 imposes a penalty, its requirements are strictly construed. Id. "Penalties for bad faith are not authorized . . . where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." (Citation and punctuation omitted.) *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 731 (2) (691 SE2d 633) (2010).

Ordinarily, the question of bad faith is one for the jury. See, e.g., *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 250 (779 SE2d 459) (2015). However, "when there is no evidence of unfounded reason for the nonpayment, *or* if the issue of liability is close, the court should disallow imposition of bad faith penalties." (Citation and punctuation omitted; emphasis supplied.) Id. (an insurer having any reasonable factual or legal ground for contesting claim is entitled to summary judgment under OCGA § 33-4-6). "Moreover, the mere fact of nonpayment is not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith." (Citation and punctuation omitted.) *Old Republic Natl. Title Ins. Co. v. RM Kids, LLC*, 337 Ga. App. 638, 650 (6) (788 SE2d 542) (2016). "Rather, bad faith is

20

shown by evidence that under *the terms of the policy* upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment." (Citation and punctuation omitted; emphasis in original.) Id. In addition, "a defense going far enough to show reasonable and probable cause for making it would vindicate the good faith of the company as effectually as would a complete defense to the action." (Citation and punctuation omitted.) *Choate Constr. Co. v. Auto-Owners Ins. Co.*, 335 Ga. App. 331, 340 (2) (779 SE2d 465) (2015).

Based on the record before us, we conclude that ASIC was entitled to summary judgment on Sto's bad faith claim. The question of whether the previous reservations of rights were still effective had not been squarely answered in Georgia, and it may have appeared from a review of ASIC's records that reservation of rights letters had been subsequently sent out once ASIC agreed to cover the litigation.[13] See *Griffin*, 302 Ga. App. at 731 (2) (reversing trial court's denial of insurer's motion for summary judgment on bad faith claim where nonpayment was based on its contention

---

[13] Even if, as the dissent argues, Sto has presented some evidence that ASIC was in part motivated by its own economic self-interest, our law is clear that "penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim." (Citation and punctuation omitted.) *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 290 (2) (779 SE2d 55) (2015).

21

that claim was not a covered loss); *Flynt v. Life of the South Ins. Co.*, 312 Ga. App. 430, 431 (718 SE2d 343) (2011) (where insurer's reasons for refusing to pay were erroneous but not frivolous or unreasonable, summary judgment in favor of insurer is proper). Accordingly, we reverse that portion of the trial court's order denying summary judgment to ASIC on Sto's bad faith claim.

*Judgment affirmed in part and reversed in part. Doyle, C. J., Ellington, P. J., Andrews, Rickman, Mercier, and Reese, JJ., concur. Barnes, P. J., concurs in part in Divisions 1, 2, 3, and 4 and dissents as to Division 5. Miller, P. J., concurs in part in Divisions 1, 2, 3, and 4 and in judgment only with the dissent in Division 5.*

A17A0453.  AMERICAN SAFETY INDEMNITY COMPANY v.   xx-023

  STO CORP.

BARNES, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent to Division 5 of the majority opinion that addresses Sto

Corp.'s bad faith claim.[1]  Given the record before us, the question whether American

Safety Indemnity Company ("ASIC") acted in bad faith under OCGA § 33-4-6 by

refusing to pay insurance policy proceeds to Sto should be resolved by a jury rather

---

[1] I concur fully in Divisions 1-4 of the majority opinion.

than by this Court. Consequently, the trial court's denial of summary judgment to ASIC on Sto's bad faith claim should be affirmed.

"It is usually a question for the jury whether an insurance company, in refusing to pay a loss, acted in bad faith" under OCGA § 33-4-6, and "bad faith" in this context does not require a showing of actual fraud by the insurer. *Palatine Ins. Co. v. Gilleland*, 79 Ga. App. 18, 23 (3) (52 SE2d 537) (1949). Rather, an insurer's "complete failure to prove any defense to an action on the policy is evidence of the bad faith contemplated by OCGA § 33-4-6, and subjects the insurer to a verdict for the statutory penalty and attorney's fees." (Punctuation and footnote omitted.) *Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 290 (2) (779 SE2d 55) (2015), quoting *Reserve Life Ins. Co. v. Ayers*, 217 Ga. 206, 213 (3) (121 SE2d 649 (1961). And while "[a] defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the [insurance] company[,] [a]ny defense not manifesting such reasonable and probable cause, would expose the company to the imputation of bad faith." (Citation and punctuation omitted.) *Sawyer v. Citizens & S. Nat. Bank*, 164 Ga. App. 177, 183 (2) (c) (296 SE2d 134) (1982), quoting *Interstate Life & Acc. Ins. Co. v. Williamson*, 220 Ga. 323, 325-326 (2) (138 SE2d 668) (1964). If "it cannot be said as a matter of law that [the insurer's] defense was

2

a reasonable defense which vindicates the good faith of the insurer," then the insurer is not entitled to summary judgment on the issue of bad faith penalties under OCGA § 33-4-6. Id., quoting *Colonial Life & Acc. Ins. Co. v. McClain*, 243 Ga. 263, 265 (1) (253 SE2d 745) (1979). See *Certain Underwriters at Lloyd's of London v. Rucker Constr.*, 285 Ga. App. 844, 850 (3) (648 SE2d 170) (2007).

Here, as the majority thoroughly explains in Divisions 1-4 of its opinion, the uncontroverted evidence of record shows that ASIC waived its coverage defenses and its right to rescind the policies as a matter of law and thus had no basis for denying Sto's claims. Given that the uncontroverted record shows that ASIC was not entitled to deny coverage to Sto, "it cannot be said *as a matter of law* that [ASIC] had a reasonable defense or probable cause to deny [Sto's claims]." (Emphasis in original.) *Auto-Owners Ins. Co.*, 334 Ga. App. at 291 (2). See *Sawyer*, 164 Ga. App. at 183-184 (2) (c) (concluding that jury issue existed as to whether the insurer raised a "reasonable defense" to coverage and thus as to whether its nonpayment of claim was in bad faith, where summary judgment was granted to the insured on the issue of the insurer's liability for loss of vehicle under the policy).

Furthermore, Sto presented some evidence, construed in its favor as the non-movant on summary judgment, that ASIC's ultimate decision to deny coverage was

3

based on its own economic self-interest rather than a valid policy defense. Specifically, Sto presented evidence that although ASIC reversed its initial decision and chose to defend Sto in the Canal Side Lofts litigation, ASIC reversed course yet again and immediately engaged outside counsel to explore avoiding any payment of policy proceeds to Sto the day after the jury returned a $918,700 verdict against Sto. Sto also presented evidence that ASIC took control of the Crescent Shores Condominium litigation after initially denying coverage, but then reversed course again and denied coverage only after the litigation had continued for another year and a half. In light of the timing of ASIC's reversals of its decisions to defend the Canal Side and Crescent Shores claims, when combined with the uncontroverted evidence showing that ASIC was not entitled to deny coverage, a jury could find that ASIC's refusal to provide coverage was frivolous and unfounded and thus rose to the level of bad faith. See *King v. Atlanta Cas. Ins. Co.*, 279 Ga. App. 554, 556 (1) (631 SE2d 786) (2006) ("Bad faith for purposes of OCGA § 33-4-6 is any frivolous and unfounded refusal in law or in fact to pay according to the terms of the policy.").

Under these circumstances, a jury should resolve whether ASIC acted in bad faith, and we therefore should affirm the trial court's denial of summary judgment to

4

ASIC on Sto's bad faith claim under OCGA § 33-4-6.[2] Because the majority concludes otherwise, I respectfully dissent.

I am authorized to state that Presiding Judge Miller joins in this dissent in judgment only.

---

[2] ASIC also argues that it was entitled to summary judgment on Sto's bad faith claim under OCGA § 33-4-6 because Sto's demand letters did not ask ASIC to pay a "sum certain." But when an insured makes a demand to the insurer under OCGA § 33-4-6, "[n]o specific language is required." *BayRock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 20 (648 SE2d 433) (2007). Rather, the language of the demand need only "be sufficient to alert the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." (Citations and punctuation omitted.) Id. Sto's demand letters met that notice requirement.

5