**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 14, 2020**

# In the Court of Appeals of Georgia

A20A1513. PENN-AMERICA INSURANCE CO. v. MORGAN FLEET SERVICES INC.

DILLARD, Presiding Judge.

Penn-America Insurance Co. appeals from the trial court's denial of its motion for summary judgment and grant of Morgan Fleet Services Inc.'s motion for summary judgment. Penn-America argues on appeal that the trial court erred by (1) failing to declare an insurance policy it issued to MFS void due to an admitted misrepresentation, and (2) concluding that it was estopped from seeking to void the policy or waived the right to do so. For the reasons set forth *infra*, we affirm.

Viewed *de novo* in the light most favorable to Penn-America (*i.e.*, the non-moving party),[1] the record shows that on August 24, 2017, Armer Early—a bus driver

---

[1] *See, e.g.*, *Fayette Cnty. Bd. of Tax Assess. v. Walmart Stores, Inc.*, 354 Ga. App. 584, 584 (841 SE2d 104) (2020) ("In reviewing the grant or denial of a motion

for the Gwinnett County Board of Education—filed suit against MFS after she was severely injured while going through the emergency exit of a bus that burst into flames. Specifically, Early alleged that MFS was "a party to a contractual agreement to service, maintain, and inspect buses" for the school system and, *inter alia*, failed to adequately perform its duties, resulting in her injuries.

In 2014, MFS applied for insurance coverage with Penn-America. The application asked for a description of "all business operations conducted by [the] applicant," and MFS responded that it "[i]nstalls seat covers in buses[.]" The form also contained the following certification:

> I hereby certify the information contained in this application is true and I agree that a misrepresentation of any facts by me will constitute reason for the Company to void or cancel any policy issued on the basis of this application and I will hold the Company harmless for the action taken. I also agree that if a policy is issued pursuant to this application, the application shall become part of the policy and any renewal or rewrite thereof.

for summary judgment, we conduct a de novo review of the law and the evidence, and we view the evidence in the light most favorable to the nonmovant. On de novo review, we owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts.").

2

Thereafter, Penn-America issued a policy to MFS. The policy declarations described MFS's business as a "warehouse," and provided "commercial general liability coverage" for an annual premium of $364 and "commercial property coverage" for an annual premium of $650. For the general liability coverage, the policy provided that Penn-America had "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." It further provided that, by accepting the policy, MFS was agreeing that, *inter alia*, the statements in the policy declarations were "accurate and complete," "based upon representations you made to us," and Penn-America "issued this policy in reliance upon your representations." The $364 annual premium for general liability coverage was based on the understanding of MFS's operations as reflected in the application—*i.e.*, owning a warehouse used to install seat covers in buses.

It is undisputed that MFS performed inspections of school buses for Gwinnett County Public Schools between October 2003 and June 31, 2018,[2] and inspected the

---

[2] MFS further admitted that, during this same time period, it also entered into contracts and performed bus inspections for other entities.

3

bus at issue in Early's action against MFS.[3] But according to Penn-America, it would not have issued the specific policy it provided to MFS if it had been informed that MFS was performing services such as bus inspections, which could give rise to auto-related liability.

On October 6, 2017, after reviewing Early's complaint against MFS, Penn-America contacted its underwriter, noting that the risk for MFS had "always been rated as a private warehouse" and was based on a business description of installing seat covers on buses. Penn-America ultimately asked the underwriter if there were any other policies for MFS or if the exposure of bus inspections was noted anywhere in the file. On October 9, 2017, the underwriter responded that they had no "notes or indication that [MFS's] operations include inspection" of buses and the "original intention of this policy was simply based on storage of seat covers." The underwriter also had no other policies for MFS "for any kind of inspection operations." Penn-America responded the same day that it would forward this information to its claims department.

---

[3] These inspections were thorough and included, *inter alia*, the buses' emergency equipment, transmission, shifter, engine controls, lights, brakes, suspension, tires, and other components.

4

Subsequently, on October 10, 2017, Penn-America wrote to outside counsel, while carbon copying two MFS employees, advising that the policy it issued to MFS was "only to cover a warehouse storing bus seat covers," asking if outside counsel had inquired of MFS "who their other carrier is for [the fleet services] aspect of the business," and informing outside counsel that "coverage counsel [was] looking at [the] matter." Then, on October 16, 2017, Penn-America notified outside counsel that it would be "providing a defense of this matter under a Reservation of Rights," and that a "letter will be forwarded shortly." The email further indicated that Penn-America wished for outside counsel to defend MFS in Early's lawsuit. Again, two MFS employees were carbon copied on this email.

The letter referenced in Penn-America's October 16, 2017 email was eventually sent to MFS in March *2018*, and provided, *inter alia*, that,

> [f]or the reasons more fully addressed below, and as previously discussed with you, Penn-America will conduct an investigation and provide a defense to [MFS] in the [Early] Litigation, subject to a full reservation of rights, and subject to Penn-America's right to withdraw from the defense of the case if subsequent information indicates that such action is warranted.

5

Penn-America also expressly reserved "the right to assert additional defenses to any claims for coverage in the future as may be necessary or appropriate." The letter went on to explain that MFS's policy with Penn-America covered the time period outlined in Early's complaint, but MFS's application for the policy identified the business as one that installed seat covers, which "was the risk that Penn-American [sic] intended to insure through the policy." Ultimately, the letter informed MFS that "[i]f the allegations of [Early's] complaint are true, and [MFS] was not only installing seat covers on buses, but was also inspecting and maintaining the buses for the Board [of Education], the application contains a material misrepresentation of the nature of [MFS's] business." As a result, based on that misrepresentation, Penn-America would have "the right to rescind, void, or cancel the Policy, and Penn-America expressly reserves its right to do so."

Thereafter, Penn-America filed suit on October 17, 2018, seeking a declaration that the policy it issued to MFS was void and it had no duty to defend MFS in Early's suit. Penn-America filed for summary judgment in its favor on the basis of MFS's admitted discrepancies between the services it actually performed and the description of its services on the application for coverage. MFS then filed a cross-motion for summary judgment, contending that Penn-America was estopped from asserting the

6

defense of noncoverage because it assumed and conducted an initial defense of Early's suit without effectively notifying MFS that it was doing so under a reservation of rights. The trial court ultimately granted summary judgment in MFS's favor and denied Penn-America's request for summary judgment. This appeal by Penn-America follows.

Setting aside the question of whether MFS's insurance policy was void based on its admitted misrepresentations, Penn-America waived its right to void the policy when it undertook the defense of MFS without first reserving its rights. Indeed, if an insurer fails to properly reserve its rights, the insurer may be estopped from later denying coverage.[4] It is well established that

> risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, may be subject to the doctrine [when] the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage.[5]

---

[4] *Am. Safety Idem. Co. v. Sto Corp.*, 342 Ga. App. 263, 267 (2) (802 SE2d 448) (2017); *see Gibson v. Preferred Risk Mut. Ins. Co.*, 216 Ga. App. 871, 874 (456 SE2d 248) (1995) ("It is true that an insurer may be estopped to deny coverage once it has undertaken to defend a claim and performs that undertaking negligently.").

[5] *Am. Safety Indem.*, 342 Ga. App. at 267 (2) (punctuation omitted); *accord Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318 (319 SE2d 445) (1984).

But the insurer can avoid estoppel by "giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position."[6]

To determine whether an insurer's notice to the insured is sufficient, the reservation of rights must, at a minimum, "fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured."[7] Additionally, the reservation of rights should also inform the insured of "the specific basis for the insurer's reservations about coverage."[8] And importantly, to be effective, a reservation of rights must be "unambiguous; if it is ambiguous, the purported reservation of rights must

---

[6] *Am. Safety Indem.*, 342 Ga. App. at 267 (2) (punctuation omitted); *accord State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC*, 296 Ga. App. 648, 653 (4) (675 SE2d 534) (2009); *O'Brien Family Trust v. Glen Falls Ins. Co.*, 218 Ga. App. 379, 380 (1) (461 SE2d 311) (1995).

[7] *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152 (1) (695 SE2d 6) (2010) (citation & punctuation omitted); *accord S. Trust Ins. Co. v. Mtn. Express Oil Co.*, 351 Ga. App. 117, 122 (828 SE2d 455) (2019); *Am. Safety Indem.*, 342 Ga. App. at 267 (2).

[8] *World Harvest Church*, 287 Ga. at 152 (1) (citation & punctuation omitted); *accord ACCC Ins. Co. of Ga. v. Walker*, 351 Ga. App. 722, 723 (2) (832 SE2d 878) (2019) (physical precedent only); *Am. Safety Indem.*, 342 Ga. App. at 267 (2).

be construed strictly against the insurer and [forgivingly] in favor of the insured."[9]

Finally, the notice cannot be only a "statement of future intent,"[10] and, once again, must be timely.[11]

Here, in the October 10, 2017 email to outside counsel, Penn-America indicated that it was aware of and investigating the potential for non-coverage of the

---

[9] *World Harvest Church*, 287 Ga. at 152-3 (1) (punctuation omitted); *accord ACCC Ins. Co. of Ga.*, 351 Ga. App. at 723 (2) (physical precedent only); *Am. Safety Indem.*, 342 Ga. App. at 267 (2).

[10] *World Harvest Church*, 287 Ga. at 152 (1) (punctuation omitted); *accord accord ACCC Ins. Co. of Ga.*, 351 Ga. App. at 723 (2) (physical precedent only); *see Proudfoot v. Cotton States Mut. Ins. Co.*, 230 Ga. 169, 171 (3) (196 SE2d 131) (1973) ("[A] statement of future intent . . . could not be held to be a present 'reservation of rights' notice to the insured.").

[11] *See Boatright v. Old Dominion Ins. Co.*, 304 Ga. App. 119, 123 (2) (a) (695 SE2d 408) (2010) ("The insurer can avoid estoppel by giving *timely* notice of its reservation of rights which fairly informs the insured of the insurer's position." (emphasis supplied)); *State Farm Fire & Cas. Co.*, 296 Ga. App. at 648, 653 (4) (same); *O'Brien Family Trust*, 218 Ga. App. at 380 (1) (same); *see also State Farm Mut. Auto. Ins. Co. v. Anderson*, 104 Ga. App. 815, 818 (123 SE2d 191) (1961) ("The general rule of estoppel is limited by the principle that a liability insurer may avoid the operation of the rule by giving the insured timely notice that, notwithstanding its defense of the action against him[,] it has not waived the defenses available to it against the insured. Such notice, to be effective, must fairly inform the insured of the insurer's position, and must be timely, although delay in giving notice will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense." (punctuation omitted)).

claim at issue in Early's action against MFS.[12] So, as of that date, Penn-America knew that the claims by Early against MFS did not comport with the representations MFS made about the nature of its business on the policy application. Nevertheless, on October 16, 2017, Penn-America sent notification that it would "provid[e] a defense of this matter under a Reservation of Rights" and a "letter will be forwarded shortly." The email further indicated that Penn-America wished for outside counsel to defend MFS in Early's lawsuit.[13] But this October email was only a statement of future intent

---

[12] We reject Penn-America's assertion that it lacked even constructive knowledge of non-coverage when it was put on notice by the allegations in Early's complaint that MFS inspected school buses. *See Hepner v. S. R.R. Co.*, 182 Ga. App. 346, 347 (356 SE2d 30) (1987) ("Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it."); *see also Golden v. Nat'l Life & Acc. Ins. Co.*, 189 Ga. 79, 80 (2) (5 SE2d 198) (1939) (defining "constructive knowledge" as "knowledge which might have been acquired by diligence but was not acquired").

[13] We do not address Penn-America's argument that MFS failed to present evidence of the defense Penn-America provided in the underlying action because Penn-America failed to make that specific argument before the trial court. *See*, *e.g., Flesch v. Flesch*, 301 Ga. 779, 781 (1) (b) (804 SE2d 67) (2017) (explaining that the court will not consider a legal argument advanced for the first time on appeal); *Harper v. Harper*, 267 Ga. App. 553, 557 (2) (600 SE2d 659) (2004) (noting that an appellate court will not consider an argument raised for the first time on appeal); *Chiaka v. Rawles*, 240 Ga. App. 792, 796 (4) (525 SE2d 162) (1999) ("This court will not consider arguments neither raised nor ruled on in the trial court and that are asserted for the first time on appeal."). In any event, the evidence shows that Penn-America actually *retained counsel* to defend MFS. *See Scruggs v. Int'l Indem. Co.*,

10

to "forward shortly" an actual reservation of rights.[14] And the actual unambiguous reservation of rights was not forwarded "shortly," but rather was sent nearly *six months* later, in March 2018, *after* Penn-America had already engaged the services of outside counsel to represent MFS in Early's suit. As a result, Penn-America waived the defense of noncoverage of Early's claims against MFS by its failure to provide a timely reservation of rights.[15]

---

233 Ga. App. 772, 773 (1) (505 SE2d 267) (1998) (holding that insurer "undertook their defense" when it notified the insured "that it had retained another attorney to represent [the insured]"). *Cf. Adams v. Atlanta Cas. Co.*, 235 Ga. App. 288, 290 (3) (509 SE2d 66) (1998) (explaining that insurer had not assumed or conducted the initial defense when it did not "retain counsel, file pleadings, or conduct a defense").

[14] *See World Harvest Church*, 287 Ga. at 152 (1) ("[N]otice cannot be only a statement of future intent[.]" (punctuation omitted)); *Proudfoot*, 230 Ga. at 171 (3) ("[A] statement of future intent . . . could not be held to be a present 'reservation of rights' notice to the insured."); *see also ACCC Ins. Co. of Ga.*, 351 Ga. App. at 723 (2) ("[T]he notice cannot be only a statement of future intent but, at a minimum, must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured." (punctuation omitted)) (physical precedent only).

[15] *See Am. Safety Idem.*, 342 Ga. App. at 267 (2) ("An insurer must act reasonably promptly in reserving its rights."); *Builders Ins. v. Tenenbaum*, 327 Ga. App. 204, 209-10 (1) (757 SE2d 669) (2014) ("[D]efenses to coverage can be waived where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage."); *see also Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 405-06 (2-3) (730 SE2d) (2012) ("The disclaimer language in [insurer's] denial letter purporting to reserve its rights to assert certain defenses later was *not* a reservation of rights in the sense that term

11

For all these reasons, we affirm the trial court's grant of summary judgment in favor of MFS and its denial of Penn-America's motion for summary judgment.

*Judgment affirmed. Rickman and Brown, JJ., concur.*

---

is used in the insurance industry. . . . The boilerplate language in the denial letter purporting to reserve the right to assert a myriad of other defenses at a later date did not clearly [provide] notice of [the insurer's] position."). For these same reasons, we likewise reject Penn-America's assertion that MFS "accepted" the "offered defense" under the March 2018 reservation of rights. *Cf. Jacore Sys., Inc. v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 513-14 (1) (a) (390 SE2d 876) (1990) (noting, in case in which insurer sent an immediate and effective reservation of rights, that "[b]y not objecting to the reservation of rights letter and by permitting [the insurer] to go forward with its defense of the suit, [the insured] [was] deemed to have consented to the letter's terms"); *Anderson*, 104 Ga. App. at 819 ("In none of the cases cited by the plaintiff and none examined by this court is it held that when an insurer defends an action after giving the insured *timely and sufficient* notice that it is not waiving its right to deny liability and the insured does not reject the insurer's defense under this condition, the insurer is nevertheless estopped to deny liability for a judgment against the insured." (emphasis supplied)).