**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 16, 2015**

# In the Court of Appeals of Georgia

A15A0917. AMICA MUTUAL INSURANCE COMPANY v. SANDERS et al.

BRANCH, Judge.

We granted the application of Amica Mutual Insurance Company ("Amica") to determine whether a trial court erred in denying Amica partial summary judgment as to Ullaine and Stephanie Sanders ("plaintiffs")' bad-faith claim arising from Amica's offer of $716.25 to settle the diminished value of their car after it was hit by Amica's insured. Amica argues that its adjuster's application of a formula established in the wake of the Georgia Supreme Court's decision in _State Farm Mut. Auto. Ins. Co. v. Mabry_, 274 Ga. 498 (556 SE2d 114) (2001), cannot, in the absence of any other evidence of bad faith, justify such a claim. We agree and therefore reverse.

Although we would view the record in favor of plaintiffs as the non-movants, the relevant facts are not in dispute. In *Mabry*, supra, our Supreme Court held that insurers were contractually bound to compensate their insureds for both the cost of repair and the vehicle's lost value. The Court reasoned that because "value, not condition, is the baseline for the measure of damages in a claim under an automobile insurance policy in which the insurer undertakes to pay for the insured's loss from a covered event," an insurance contract affording the insurer an option to repair "serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value." 274 Ga. at 506 (4). The Court thus concluded that

> the policies issued by [the insurer] obligate it to compensate its policyholders for that loss of value, notwithstanding repairs that return the vehicle to pre-loss condition in terms of appearance and function, if the repairs do not return the vehicle to its pre-loss value; and [the insurer] is obligated to assess that element of loss along with the elements of physical damage when a policyholder makes a general claim of loss.

Id. at 509 (4). Accordingly, on December 7, 2001, the Insurance Commissioner of Georgia issued a directive to all property and casualty insurers licensed in the state that they were now required to adjust claims by including "assessment and payment

2

of diminution of value relative to physical damage." Officer of Insurance Commissioner, Directive 01-P&C-1.

The so-called "17 (c)" formula is named after paragraph 17 (c) of the second injunction issued in the class action styled *Myron G. Walker, Individually and On Behalf of All Others Similarly Situated v. American National General Insurance Company, Individually and On Behalf of All Similarly Situated Insurers in the State of Georgia* (Muscogee County Superior Court Civil Action No. SU-03-CV-2058). The 17 (c) formula specifies that the application of a so-called "damage severity modifier" was a "subjective decision, which must be made by the adjuster," and that the modifier "can be adjusted as necessary to fit the damage[]." The formula also notes that while it provided "a good figure on which to base a loss of value claim, there are many circumstances that will require additional consideration in determining the loss of value," including prior damage to and dealer ownership of the car at issue. In a settlement order dated July 14, 2004, the *Walker* class action terminated those plaintiffs' claims on conditions including that the defendant insurers, including Amica, "shall continue the use of the 17 (c) formula . . . in their assessment of diminished value in physical damage losses reported by these insurer[s'] policyholders subsequent to June 30, 2003[.]" The *Walker* settlement order also

3

provided that 17 (c), "applied appropriately and uniformly, would provide a basis for the negotiation of [a] diminished value loss," and that insurers using 17 (c) "cannot be found to have acted in bad faith by virtue of using the formula to assess diminished value claims."

On December 2, 2008, the Insurance Commissioner issued a second directive attempting "to clarify the Department's position" on diminished value claims. The Commissioner noted that

> defining the amount of loss associated with diminution of value is a subjective process where even experts can have a difference of opinion. For this reason, the Department has not endorsed a particular formula or method. Each claim is unique and should be evaluated as such. Every carrier has the obligation to evaluate the vehicle prior to loss and after the loss to determine the amount of diminution in value in accordance with Georgia law and applicable contractual language. *Total reliance on one particular formula or method in making that evaluation may not be appropriate given the subjective nature of the claim*.

Office of Insurance Commissioner, Directive 08-P&C-2 (December 2, 2008) (emphasis supplied). The same directive mandated that insurers should

> cease using any language which implies that the Department has endorsed a particular formula or method to determine diminution of value. Specifically, any insurer disseminating information and/or

4

appraisals to their insureds shall cease using any language which implies that the Mabry decision or any other requirement of the Department supports the proposition that the diminished value result obtained by a carrier's use of a particular formula or method constitutes the definitive determination of the carrier's liability to its insured.

Id.

These rulings and directives were in effect on March 7, 2009, when a vehicle driven by defendant Robert Miller crossed over the center line and struck plaintiffs' 2008 Nissan Sentra, forcing it into a third vehicle. At the time of the accident, Miller was insured by Amica, which assigned Mike Frazier, an adjuster, to perform both the repair estimate and the diminished value estimate for plaintiffs' car. Frazier first estimated the car's repair costs at $4,104.60. Using the 17 (c) formula, Frazier also estimated diminished value at zero because the car did not appear to have suffered any "structural damage." On disassembly of the car, however, Frazier saw frame damage that required what he estimated to be an additional $3,307.47 in repairs, for a total repair cost estimate of $7,412.07. In light of the discovered frame damage, but continuing to apply 17 (c), Frazier also revised his estimate of diminished value upward from zero to $716.25.

In light of Frazier's revised estimates, Amica offered plaintiffs $716.25 for the diminished value of their car, which they rejected. Plaintiffs' own appraiser later estimated the car's diminished value at approximately $3000. In February 2010, plaintiffs made a written demand on Amica for $3000 in diminished value as well as $22,000 in punitive damages and attorney fees on grounds including that Miller had been driving under the influence at the time of the accident. Amica rejected this demand, but offered $1000 to settle the claim.

In October 2013, plaintiffs filed the instant suit asserting negligence and seeking compensatory and punitive damages against Miller as well as bad faith damages and attorney fees against Amica. Amica later moved for partial summary judgment as to plaintiffs' bad faith claim on the ground that there was no evidence of bad faith in the case. The trial court denied the motion because "a jury could find that [Amica's] automatic and unwavering adherence to a certain formula in determining diminution in value is not reasonable" and that Amica's refusal to pay plaintiff's demand was in bad faith. The trial court granted Amica a certificate of immediate review as to this holding, and we granted Amica's application for interlocutory review.

6

Amica argues that the trial court erred when it denied Amica's motion for partial summary judgment as to plaintiffs' bad faith claim because the record contains no evidence in support of such a claim. We agree.

OCGA § 33-4-6 (a) provides:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

To prevail on a claim for bad faith penalties under OCGA § 33-4-6, an insured has the burden of proving

(1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith. Penalties for bad faith are not authorized, however, where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact. Bad faith is shown by evidence that under the terms of the policy under which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment.

7

*Lawyers Title Insurance Corp. v. Griffin*, 302 Ga. App. 726, 730-731 (2) (b) (691

SE2d 633) (2010) (citations, punctuation, and emphasis omitted). Because "damages

[under OCGA § 33-4-6] are in the nature of a penalty, the statute is strictly construed

and the right to such recovery must be clearly shown." *Florida Int'l Indem. Co. v.

Osgood*, 233 Ga. App. 111, 115-116 (3) (503 SE2d 371) (1998) (footnote omitted).

The question whether an insurer's failure to make payment as demanded by its

insured was motivated by bad faith is generally for the jury. *Transp. Ins. Co. v.

Piedmont Constr. Group*, 301 Ga. App. 17, 21-22 (2) (686 SE2d 824) (2009); *First

Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232, 233 (2) (477

SE2d 390) (1996). An insurer may be entitled to judgment as a matter of law,

however, where the insured fails to adduce "any evidence" which would show that

the insurer relied upon a defense that "was frivolous and unfounded and was asserted

without reasonable and probable cause." *Canal Insurance Co. v. Bryant*, 173 Ga.

App. 173, 174 (2) (325 SE2d 839) (1984) (citations and punctuation omitted). See

also *Certain Underwriters &c. v. Rucker Constr.*, 285 Ga. App. 844, 850 (3) (648

SE2d 170) (2007) ("[A] judgment for a bad faith penalty [under OCGA § 33-4-6 (a)]

will be affirmed if there is any evidence to support it, unless it can be said as a matter

8

of law that the insurer had a reasonable defense which showed its good faith in denying coverage.") (footnote omitted).

As the *Walker* trial court noted, insurer defendants, including Amica, who use 17 (c) "cannot be found to have acted in bad faith by virtue of using the formula to assess diminished value claims." As we also noted in an unpublished 2012 opinion:

> Although the Insurance Commissioner's 2008 directive indicates that, because finding the amount of diminished value is a subjective process, more is required than merely relying on any particular formula or method in making that evaluation, *no Georgia statute, insurance regulation, or common law precedent requires that an insurer use an independent appraiser or otherwise specifies the requirements of that subjective process*.

*Miles v. State Farm Fire & Casualty Co.*, 317 Ga. App. XXVI (Case No. A12A1166, decided July 27, 2012), p. 9 (emphasis supplied).

Here, undisputed evidence shows that the 17 (c) formula emphasizes the "subjective" nature of any estimation, that Amica's adjuster applied 17 (c) to estimate the lost value of plaintiffs' car, and that he did so as part of a subjective determination of that value. The adjuster testified that as to his first assessment of diminished value, and with "so many variables [existing] from car to car, [but] based on this particular vehicle, and this particular damage, and this particular 17 (c)," he determined "that

9

the loss of value . . . was zero." Because undisputed facts show that Amica's adjuster used the 17 (c) formula as part of his subjective determination of the lost value of the car at issue, and because plaintiffs have not introduced any evidence to the contrary, we conclude that Amica's proposed adjustment of plaintiffs' diminished value claim was not frivolous or unfounded and was not asserted without reasonable and probable cause. See *Griffin*, supra, 302 Ga. App. at 730-731 (2) (b) (insurer had a reasonable basis upon which to deny the insurer's demand for $300,000 for diminished value of a parcel as a result of an undisclosed easement, precluding bad faith penalties, where the insurer's own valuation showed that the parcel suffered no loss in value or a loss of no more than $25,000); *Bryant*, supra, 173 Ga. App. at 174 (2) (insured failed to meet his burden of producing any evidence that the insurer's defense to his claim was unfounded where the insurer rejected the claim for vehicle damage because the vehicle's engine trouble was caused not by vandalism but by inadequate maintenance and wear and tear). It follows that the trial court erred when it denied Amica's motion for partial summary judgment as to plaintiffs' bad faith claim.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*