**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0547.  TAYLOR  v.  GOVERNMENT  EMPLOYEES
INSURANCE COMPANY.

REESE, Judge.

Beryl Taylor appeals from the trial court's grant of summary judgment to the Government Employees Insurance Company ("GEICO"), her uninsured motorist carrier. Taylor contends that the trial court erred in finding that there was no evidence of GEICO's frivolous or unfounded refusal to pay her demand for the $25,000 limit of her uninsured motorist policy and, thus, she was not entitled to bad faith penalties under OCGA § 33-7-11 (j). For the reasons set forth infra, we affirm.

Viewing the evidence in the light most favorable to Taylor,[1] the record shows that Taylor and Charles Edwards, Jr.,[2] were involved in an automobile collision on December 22, 2013, in Clayton County. Edwards's insurance carrier tendered the limits of his policy – $25,000 – to Taylor on March 3, 2015. In consideration, Taylor signed a limited release of Edwards's liability.

At the time of the collision, Taylor held an uninsured motorist policy ("policy") with GEICO that had a $25,000 coverage limit. On March 3, 2015, Taylor sent a demand letter to GEICO, pursuant to OCGA § 33-7-11, demanding the full amount of benefits under the policy. According to the letter, Taylor had "*incurred more than $20,800.00 in current medical expenses and lost wages and will incur future medical expenses related to her back and neck herniations*. Although [Taylor] has endured more than ten months of physical therapy and objective testing, *she continues to experience back and neck pain and will require future medical treatment*."[3]

---

[1] See *Flynt v. Life of the South Ins. Co.*, 312 Ga. App. 430, 431 (718 SE2d 343) (2011).

[2] Edwards is not a party to the instant appeal.

[3] (Emphasis in original.)

On March 10, 2015, a GEICO claim examiner, Elizabeth Saucillo, received the demand letter and began her investigation of the claim. Based upon her investigation and calculations, and after consulting with her supervisor, on March 30, Saucillo contacted Taylor's attorney in response to the demand letter and offered Taylor $750 as an initial offer to settle. Taylor rejected the offer out-of-hand, did not make a counteroffer, and refused to negotiate further with GEICO. A few days later, on April 10, 2015, Taylor filed suit against Edwards to establish the amount of her damages ("underlying case"). The underlying case proceeded to trial in December 2016, and a jury ultimately awarded Taylor $120,131.97. Based upon the jury verdict, GEICO paid Taylor the limits of the policy, $25,000.

Then, on January 2, 2017, Taylor filed suit against GEICO (the "bad faith claim"), asserting that GEICO's failure to pay her $25,000 within 60 days of her demand letter constituted bad faith as a matter of law, and seeking a 25 percent bad faith penalty and attorney fees under OCGA § 33-7-11 (j). OCGA § 33-7-11 (j) provides, in relevant part, as follows:

> If the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad

faith,[4] the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorney's fees for the prosecution of the case under this Code section. The question of bad faith, the amount of the penalty, if any, and the reasonable attorney's fees, if any, shall be determined in a separate action filed by the insured against the insurer after a judgment has been rendered against the uninsured motorist in the original tort action.

GEICO answered Taylor's complaint and moved for summary judgment, asserting that there was no evidence to support a finding that its refusal to pay Taylor the $25,000 policy limit was made in bad faith or was otherwise frivolous or unfounded.[5] GEICO argued that, on the contrary, the undisputed evidence showed that its claims examiner had conducted a thorough investigation of the case and

---

[4] When a bad faith claim is made pursuant to OCGA § 33-7-11 (j), "[t]he insurer's bad faith, if any, in failing to pay, would be that involved in not paying within 60 days of the demand." *Lewis v. Cherokee Ins. Co.*, 258 Ga. 839, 841 (375 SE2d 850) (1989).

[5] See *Flynt*, 312 Ga. App. at 438 (3) ("The burden of proof is on the insured to establish bad faith. 'Bad faith' means a frivolous and unfounded refusal to pay the claim. An insurer's refusal to pay is not frivolous or unfounded if is predicated upon a reasonable question of law or a reasonable issue of fact, even if the insurer's position ultimately is rejected by a court or jury.") (citations and punctuation omitted).

calculated the total amount of Taylor's anticipated damages before making the initial $750 settlement offer.

After conducting a hearing on August 21, 2018,[6] the trial court granted summary judgment to GEICO, ruling that Taylor had failed to come forward with any evidence of GEICO's frivolous or unfounded refusal to pay that would authorize a bad faith penalty under OCGA § 33-7-11 (j). This appeal followed.

In Taylor's sole allegation of error, she contends that the trial court erred in granting summary judgment to GEICO on her claim for bad faith penalties, arguing that a jury issue existed as to whether there was a frivolous or unfounded refusal to pay by GEICO. According to Taylor, the trial court erred in basing its denial of her claim for bad faith penalties "solely on [GEICO's] averment that it fairly evaluated [Taylor's] claim." These arguments lack merit.

> Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact. Ordinarily, the question of bad faith is one for the jury. However, when there is no evidence of unfounded reason for the nonpayment, *or* if the issue of liability is close, the court should disallow imposition of bad faith penalties. Moreover, the mere fact of

---

[6] Taylor did not designate in her notice of appeal that a transcript of the summary judgment hearing was to be included in the appellate record.

5

nonpayment is not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith. Rather, bad faith is shown by evidence that under *the terms of the policy* upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment. In addition, a defense going far enough to show reasonable and probable cause for making it would vindicate the good faith of the company as effectually as would a complete defense to the action.[7]

---

[7] *American Safety Indem. Co. v. Sto Corp.*, 342 Ga. App. 263, 273-274 (5) (802 SE2d 448) (2017) (citations and punctuation omitted; emphasis in original). Although *American Safety Indem. Co.* addressed "bad faith" in the context of a claim for "bad faith" penalties under OCGA § 33-4-6 (a), the "bad faith" penalty provision in that statute is comparable to the one at issue in the instant case, OCGA § 33-7-11 (j). See OCGA § 33-4-6 (a) (stating, in relevant part, as follows: "In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer."); see also OCGA § 33-4-7 (insurer's affirmative duty to fairly and promptly adjust incidents covered by motor vehicle liability policies). Given this similarity, the case law applying OCGA § 33-4-6 should be persuasive in addressing a claim under OCGA § 33-7-11 (j). See generally *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 249 (779 SE2d 459) (2015) (recognizing the "similarity" between OCGA §§ 33-4-6 and 33-4-7, which authorized bad faith claims by insureds and third parties respectively, this Court found "the case law applying OCGA § 33-4-6 to be persuasive in the context" of a bad faith claim brought under OCGA § 33-4-7) (citation and punctuation omitted).

6

In this case, the record does not support Taylor's argument that the only evidence to support the court's finding that GEICO did not act in bad faith was GEICO's "averment that it fairly evaluated [Taylor's] claim." Instead, the undisputed evidence showed that Saucillo, an experienced GEICO claim examiner, began her investigation of the claim on March 10, 2015, the day she was assigned Taylor's case. As part of her investigation, Saucillo obtained information about the collision and Taylor's settlement with Edwards; contacted Taylor's employer and verified that Taylor had incurred $2,661.13 in lost wages; requested that Taylor provide a recorded statement;[8] thoroughly reviewed Taylor's medical records; and consulted with a supervisor. Based upon the medical records and her investigation, Saucillo determined that Taylor had incurred $16,429.67 in medical expenses and $2,661.13 in lost wages, totaling $19,090.80 in special damages. Saucillo then utilized GEICO's computer software program, "ClaimIQ," for estimating Taylor's general damages if the case proceeded to trial. ClaimIQ provided a range of $4,650 to $6,300 for Taylor's general damages, but Saucillo believed the estimate was too low, so she increased the upper estimate to $7,500. Adding those amounts to Taylor's $19,090 in special damages resulted in a range of $23,590 to $26,590 for Taylor's anticipated

---

[8] Taylor never provided a recorded statement to GEICO.

7

total damages. After subtracting the $25,000 Taylor had already received from Edwards's insurance carrier, Saucillo arrived at a settlement range for GEICO of $0 to $1,590, which she rounded to $1,500. Thus, on March 30, Saucillo contacted Taylor's attorney in response to the demand letter and offered Taylor $750 as a starting point for settling the claim. Taylor rejected the offer out-of-hand, did not make a counteroffer, and refused to negotiate further with GEICO.

Consequently, the record does not support Taylor's argument that GEICO avoided bad faith penalties merely by asserting "that it [had] fairly evaluated [Taylor's] claim." More importantly, Taylor has not identified what else, if anything, Saucillo or GEICO should have done – based on the information available to GEICO at that time – to avoid liability for bad faith penalties, other than paying Taylor the full $25,000 policy limit within the 60-day demand period.

Taylor suggests, however, that her medical records proved that her damages far exceeded Saucillo's calculations and settlement offer, so GEICO must have acted in bad faith by forcing Taylor to go to trial in the underlying case, instead of paying her $25,000 under the policy pursuant to her demand.

As shown above, Taylor's demand letter stated that Taylor had "endured more than ten months of physical therapy and objective testing," that she "continue[d] to

experience back and neck pain and will require future medical treatment[,]" and that she "will incur future medical expenses related to her back and neck herniations."[9] In referring to "ten months of physical therapy and objective testing," Taylor was apparently referring to the ten-month period between December 23, 2013 (the day after the collision), to October 9, 2014 (her last medical visit). According to the medical records attached to the demand letter, however, the only "physical therapy" or other medical treatment Taylor received during that ten-month period was steroid injections, chiropractic adjustments, muscle relaxants, and oral pain medication, as needed. Further, in May 2014, Taylor reported that, on a scale of "one" to "ten" (with "ten" being the most pain), her neck pain was a "one" and her back pain was a "two." And, in October 2014, Taylor reported that her pain was improving with the steroid injections. In addition, the results of the "objective test[s]" (two MRI's, neck and back x-rays, and an electromyography study) performed on Taylor during that time period were generally normal, except for degenerative changes in Taylor's spine, a small herniation and annular tear in the L4-5 disc, and a small herniation in the C4-5

---

[9] (Emphasis omitted.)

disc.[10] Finally, there is no evidence that Taylor received any medical treatment at all after October 9, 2014, six months before she sent the demand letter to GEICO, nor is there any evidence that, before Taylor sent the demand letter to GEICO, any physician had recommended surgery or additional significant treatment for Taylor's alleged injuries in the future.

Still, Taylor argues that, despite the evidence outline above, the fact that the jury awarded her significantly more than GEICO's $25,000 policy limit proved that GEICO's failure to pay her the $25,000 in benefits within the 60-day period following her demand constituted "bad faith *as a matter of law*[.]" However, Taylor has failed to cite to any evidence in the record or legal authority in support of this argument.[11] Regardless, in Taylor's demand letter, she asserted a claim for $20,800

---

[10] Contrary to Taylor's suggestion in her brief that the undisputed evidence shows that the collision caused the problems with her discs, there is no expert or other competent evidence in the record to support such a finding.

[11] See Court of Appeals Rules 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."); see also *Guilford v. Marriott Intl.*, 296 Ga. App. 503, 505 (675 SE2d 247) (2009) ("An assertion of error followed by a case citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts. Without such argument, this . . . enumeration is . . . deemed abandoned.") (citation, punctuation, and emphasis omitted).

in incurred medical expenses, future medical expenses to treat her "back and neck herniations[,]" and loss of wages. In contrast, in addition to seeking these damages at trial in the underlying case, Taylor *also* sought compensation for pain, suffering, and mental anguish, the loss of future earning capacity, general and special damages, and court costs. And, although the jury in the underlying case awarded Taylor a total of $120,131.97, there is no copy of the trial transcript or the jury's verdict in the appellate record to show how the jury apportioned its award, i.e., how much was allocated to incurred or future medical expenses, lost wages, loss of future earning capacity, court costs, etc.

Moreover, there is no trial transcript in the record to show what evidence Taylor presented at trial in the underlying case to support the jury's award. This is especially significant because the complaint against GEICO in the instant case avers that Taylor obtained the "trial deposition testimony" of a physician on December 7, 2016, in which the physician opined that Taylor's disc herniations were "a direct result of the collision[,]" and that she presented such testimony at trial in the underlying case.[12] Yet, the deposition is not in the appellate record, and the fact that

---

[12] Although the physician's deposition is not in the record, there are medical records from four office visits with the physician by Taylor between June 12, 2014, and October 9, 2014. However, the physician did not state in those records that

the deposition took place in December 2016 conclusively shows that it was not available to GEICO when Taylor sent the March 3, 2015 demand letter (or in the 60-day period that followed). Thus, Taylor has failed to show that the evidence upon which the jury ultimately reached its verdict was available to GEICO before it decided to reject her demand for the full $25,000 policy limit.[13] Under these circumstances, Taylor's assertion that, simply because the jury awarded her significantly more than $25,000 in damages, GEICO *must* have acted in bad faith, is mere speculation and conjecture on her part and is insufficient to create a jury issue.[14]

Consequently, given the undisputed evidence of GEICO's investigation following receipt of Taylor's demand letter and the medical records that were

Taylor's herniated discs (or any other neck or back problem) had been caused by the collision.

[13] See generally *McClaskey v. Jiffy Lube*, 197 Ga. App. 537, 537-538 (398 SE2d 825) (1990) ("The party asserting error on appeal has the burden to show it affirmatively by the record. The appellant has a duty to provide the appellate court with a transcript where an appeal is taken which draws in question the transcript of the evidence and proceedings.") (citations and punctuation omitted).

[14] See *Isbell v. Credit Nation Lending Svc., LLC*, 319 Ga. App. 19, 25 (2) (a) (ii) (735 SE2d 46) (2012) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted); *Mimick Motor Co. v. Moore*, 248 Ga. App. 297, 299 (1) (b) (546 SE2d 533) (2001) ("Bare conclusions and contentions unsupported by an evidentiary basis in fact are insufficient to oppose a motion for summary judgment.").

available to GEICO at the time of that demand, the trial court did not err in finding that there was no evidence to support bad faith penalties against GEICO under OCGA § 33-7-11 (j). As a result, the trial court properly granted summary judgment to GEICO.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur*.