**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 21, 2021**

# In the Court of Appeals of Georgia

A21A0212. WHITE v. CHEEK.

RICKMAN, Presiding Judge.

This appeal concerns a personal injury action arising from an automobile accident involving Stephan Duwayne White and Walter Cheek. White appeals from the trial court's denial of his motion to enforce a settlement. White contends that the trial court erred by holding that oral communications on White's behalf constituted a counter-offer, and thus an enforceable settlement agreement was never formed between the parties. For the reasons that follow, we affirm.

> We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to

create a jury issue on at least one essential element of the Appellant's case. Thus, we view the evidence in a light most favorable to the nonmoving party.

(Citation and punctuation omitted.) *Pritchard v. Mendoza*, 357 Ga. App. 283, 283-284 (850 SE2d 472) (2020).

So viewed, the record shows that Cheek filed suit against White alleging that while he was a passenger in a automobile driven by White, White lost control of the automobile and caused a collision that resulted in injuries to Cheek. GEICO was White's liability insurance carrier. On January 10, 2019, Cheek's counsel sent GEICO a letter containing an offer of compromise governed by OCGA § 9-11-67.1.[1] The offer provided in pertinent part:

> 1. The time period within which the material terms pursuant to OCGA § 9-11-67.1 (a) must be accepted is ***thirty-five (35) days*** from your receipt of this offer;

> 2. The amount of monetary payment is **GEICO's liability policy limit of $25,000**. . . .;

---

[1] OCGA § 9-11-67.1 "governs the formation of settlement agreements pursuant to a pre-suit offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants" (Citation and punctuation omitted.) *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 848 (797 SE2d 814) (2017).

3. The party that Mr. Cheek will release is Stephan D. White;

4. The type of release that Mr. Cheek will provide to Mr. White is a General Release that releases "all personal and bodily injury claims of Mr. Cheek," . . .;

5. The claims to be released by Mr. Cheek pursuant to a General Release are "all personal and bodily injury claims of Mr. Cheek," . . .;

Pursuant to OCGA § 9-11-67.1 (b), acceptance of the material terms made pursuant to OCGA § 9-11-67.1 (a) is to be made by providing written acceptance of the material terms outlined immediately above pursuant OCGA § 9-11-67.1 (a) in their entirety.

Providing written acceptance of the material terms outlined immediately above pursuant to OCGA § 9-11-67.1 (a) in their entirety is *necessary* to form a binding settlement contract, but it is *not sufficient* to form a binding settlement contract. In addition to the above . . . the following *ACTS* are material to acceptance and must be completed to form a binding settlement contract, and completion of each and every one of the following *ACTS* without a variance of any sort is required as a *material term* of this written offer of compromise in addition to the material terms stated above pursuant to OCGA § 9-11-67.1 (a):

1. Pursuant to OCGA § 9-11-67.1 (g), payment is required within fifteen (15) days after the written acceptance of this offer of compromise. . . . .

2. Your insured must provide a sworn and notarized statement that there is no other insurance coverage available to him that could pertain to this loss. . . .

3. All communications to this firm initiated by or on behalf of your insurance company or your insured relating to this offer of compromise *must be made in writing*. If a communication to this firm relating to this offer of compromise is initiated by or on behalf of your insurance company or your insured in any form other than writing, that will be a rejection of this offer of compromise. . . . ***Any offer to resolve this case by Mr. Cheek will be made in writing. Any acceptance of this offer must be made through performance of the acts required in this offer of compromise in addition to written acceptance of the material terms of this offer made pursuant to OCGA § 9-11-67.1 (a) in order for this firm and Mr. Cheek to agree that a binding agreement has been formed. Specifically, this offer of compromise cannot be accepted by a mere statement of unconditional acceptance of this offer; instead acceptance of this offer requires full performance of all ACTS required herein without variance of any sort in addition to written acceptance of the material terms of this offer made pursuant OCGA § 9-11-67.1 (a). If any condition or requirement is not met by the specified deadline or if any additional terms, conditions, or representatives are requested of Mr. Cheek or included in the release by GEICO, then there has been no acceptance and no agreement, and this offer will be immediately and automatically withdrawn.***

4. Since GEICO will require Mr. Cheek to sign a release of its insured, that release must fully comply with each and every term and condition of this offer. . . .

(Emphasis in original). The letter containing the offer of compromise also stated that, "in the unlikely event that GEICO needs any additional information regarding liability or damages to complete its evaluation of this claim, please contact me *in writing* to let me know. I will do my best to answer any questions you could possibly have."

Despite the requirement in the offer for all communications from GEICO to Cheek's counsel relating to the offer be in writing, on January 18, 2019, Cheek's counsel received the following voicemail:

Hey this is . . . with GEICO insurance, I was calling regarding your client . . . Cheek. Just wanted to let you know that I was the new bodily injury adjuster, it looks like there is a question of liability on our insured driver . . . White. I am just calling to se if you guys will be able, if you would allow, recorded statements for Mr. Cheek. My phone number is . . ., claim number is . . . Thank you.

Five days after leaving the first voicemail, Cheek's counsel received another voicemail from GEICO:

Hi this is . . . with GEICO . . . calling you regarding . . . Cheek. A liability claim has been established and assigned to me. It appears that you sent us a notice of policy limits demand, seeking a claim against our insured . . . White. I just wanted to call and let you know that the claim for liability investigation has been assigned to me for handling, we'd like to try to secure [a] recorded interview from Mr. Cheek. Our investigation at this point indicates this was a hit and run, so I'm a little confused as to where the liability rests with Mr. White. So maybe if you could shed some light on that. I can be reached at . . ., our claim number to reference . . . Thank you.

Thereafter, Cheek's counsel sent a letter to GEICO explaining that he had received GEICO's voicemail "relating to the offer of compromise I sent on Mr. Cheek's behalf on January 10, 2019. . . . [and stating that] [o]bviously, your call makes it clear that GEICO has chosen to reject Mr. Cheek's offer of compromise." Less than a month later, GEICO's counsel sent a letter stating that it was accepting Cheek's January 10, 2019 settlement demand letter and all of its terms. That letter included a $25,000 check payable to Cheek.

In May 2019, Cheek's counsel responded by sending a written reply stating that GEICO declined Cheek's offer of compromise by failing to comply with the terms of the offer and returning GEICO's $25,000 check. Thereafter, White filed a motion to enforce a settlement.

6

Following a hearing, the trial court issued an order denying White's motion. The trial court held that a condition of acceptance of Cheek's offer was that GEICO could only communicate with Cheek's counsel regarding the offer in writing and that by failing to comply with that condition, GEICO failed to establish an enforceable settlement agreement.

White contends that the trial court erred by holding that an enforceable settlement agreement was never formed between the parties.

Pursuant to OCGA § 9-11-67.1,

(a) Prior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and contain the following material terms: (1) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer; (2) Amount of monetary payment; (3) The party or parties the claimant or claimants will release if such offer is accepted; (4) The type of release, if any, the claimant or claimants will provide to each releasee; and (5) The claims to be released.

(b) The recipients of an offer to settle made under this Code section may accept the same by providing written acceptance of the material terms outlined in subsection (a) of this Code section in their entirety.

. . .

(d) Upon receipt of an offer to settle set forth in subsection (a) of this Code section, the recipients shall have the right to seek clarification regarding terms, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts. An attempt to seek reasonable clarification shall not be deemed a counteroffer.

. . .

When interpreting provisions of a statute, such as OCGA § 9-11-67.1,

we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.... [I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation and punctuation omitted). *Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013). "Additionally, all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the

8

existing law." (Citation and punctuation omitted.) *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (A) (797 SE2d 814) (2017).

"In enacting OCGA § 9-11-67.1, the General Assembly acted against the backdrop of a large body of law on contract formation generally and settlement formation specifically." *Woodard*, 300 Ga. at 852 (2) (A). "As part of that existing law, settlement agreements must meet the same requirements of formation and enforceability as other contracts." (Citation and punctuation omitted.) Id. "There is no enforceable settlement between parties absent mutual agreement between them." Id. Accordingly,

> an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. A purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle for the policy limits.

(Citation and punctuation omitted.) Id. "These basic contract law principles find their origin in the common law." *Woodard*, 300 Ga. at 853 (2) (A).

"[I]t is also a fundamental principle of contract law that "an offeror is the master of his or her offer, and free to set the terms thereof." (Citation and punctuation

9

omitted.) *Woodard*, 300 Ga. 848 at 853 (2) (A). "This principle also finds its origin in the common law." Id. "The common-law rules are still of force and effect in this State, except where they have been changed by express statutory enactment or by necessary implication." (Citation and punctuation omitted.) Id. at 854 (2) (B). Accordingly our Supreme Court has concluded that "the plain language of OCGA § 9-11-67.1 does not expressly or by necessary implication contravene these common law principles." Id.

Under OCGA § 9-11-67.1 (d), White was permitted to seek reasonable clarification "regarding terms, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts" and "[a]n attempt to seek reasonable clarification shall not be deemed a counteroffer." Nothing in the plain language of OCGA § 9-11-67.1, however, limited Cheek's ability as the offeror to require that a request for clarification be in writing. See *Woodard*, 300 Ga. at 854-855 (2) (B) ("[OCGA § 9-11-67.1 (a)] does not expressly limit Pre-Suit Offers to allow only the five terms listed therein; it reasonably can be read to require merely that every Pre-Suit Offer include, at a minimum, those five terms. Given that under the common law an offeror is free to set the terms of his of her offer, we read subsection

(a) in this fashion, in harmony with the existing law: every Pre-Suit Offer must contain the five enumerated terms, but additional terms are not prohibited.").

Cheek unambiguously stated in his offer that "[a]ll communications to this firm initiated by or on behalf of your insurance company or your insured relating to this offer of compromise *must be made in writing*" and Cheek invited a request for clarification, if necessary, if it was in writing. White violated this requirement when GEICO representatives left a voicemail for Cheek that expressly mentioned receiving the offer, questioned liability, and sought further information about the claim. Because White's representatives violated the express terms of the offer, the parties did not reach a binding settlement agreement.[2] Accordingly, we affirm the trial court's denial of the White's motion to enforce settlement. See *Pritchard*, 357 Ga. App. at 289 (reversing a grant of a motion to enforcement settlement under OCGA § 9-11-

---

[2] We feel compelled to note that White argues that our holding "sets up" insurers for "bad faith" claims. This case, however, is not about bad faith, it is about the basic contract principle that the offeror is the master of his offer. As Cheek explained in his brief to this Court, he invited clarification of the offer in writing and this could have been done by mail, email, or by facsimile. The offer stated "[w]e have supplied you with all information necessary to evaluate this offer of compromise; however should you have any questions regarding this offer of compromise, please do not hesitate to contact me *in writing* at the above address or by facsimile at [fax number] or by email at [email address]." We cannot hold that White was "set up" when he was expressly given three other acceptable forms of communication to correspond with Cheek about the settlement offer.

11

67.1 where the offeree "did not perform an act that was required for acceptance of . . . the offer, and the parties did not reach a binding settlement agreement."); see generally *Kemper v. Brown*, 325 Ga. App. 806, 808 (1) (754 SE2d 141) (2014) ("A purported acceptance of an offer that varies even one term of the original offer is a counteroffer.").[3]

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps, concurs and McFadden, C. J., concurs specially.*

---

[3] Given our conclusion, we need not address White's remaining arguments as to why the trial court erred by denying his motion to enforce settlement.

# In the Court of Appeals of Georgia

A21A0212. WHITE v. CHEEK.

MCFADDEN, Chief Judge, concurring specially.

This is another of the cases arising out of the unintended consequences of our Supreme Court's decision in *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267 (416 SE2d 274) (1992). Under *Holt* an insurer that passes up an opportunity to settle a claim within policy limits can be liable to its insured for a bad faith claim. That rule creates an incentive, in cases where damages greatly exceed policy limits, for a plaintiff to attempt to set up a bad faith claim.

The General Assembly addressed that perverse incentive by adopting OCGA § 9-11-67.1. Our Supreme Court construed that statute in light of "the backdrop of a large body of law" under which an acceptance is effective only if "the offer [is]

13

accepted unequivocally and without variance of any sort" because "an offeror is the master of his or her offer, and free to set the terms thereof," *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852-853 (2) (a) (797 SE2d 814) (citations and punctuation omitted), and "conclude[d] that the plain language of OCGA § 9-11-67.1 does not expressly or by necessary implication contravene these common law principles." Id. at 854 (2) (b).

I write separately because, while I agree that we must affirm the trial court's denial of the motion to enforce a settlement in this case, I would do so for different reasons. I would hold that under OCGA § 9-11-67.1, as authoritatively construed in *Grange*, plaintiff Cheek cannot invoke the provision of the settlement agreement on which the majority relies to declare his offer rejected; but Cheek can invoke other provisions to achieve that end.

So Cheek will now be able to proceed toward a bad faith claim. But in my view such a claim would lack merit because of the onerous requirements made of the insurer in Cheek's offer letter. I have grave concerns about the contents of that offer letter. Because it has been represented to this court that the letter is a form with broader use than this particular case, I take the opportunity in this special concurrence to explain my concerns.

14

1. *The voicemails were not a counteroffer under OCGA § 9-11-67.1.*

Under OCGA § 9-11-67.1 (d) an attempt to seek reasonable clarification is not a counteroffer. So I respectfully disagree with the majority's conclusion that, because the inquiries made by White's insurer were made in voicemails, they constituted a counteroffer. OCGA § 9-11-67.1 (d) provides that

> [u]pon receipt of an offer to settle set forth in subsection (a) of this Code section, the recipients shall have the right to seek clarification regarding terms, liens, subrogation claims, standing to release claims, medical bills, medical records, and other relevant facts. *An attempt to seek reasonable clarification shall not be deemed a counteroffer.*

(Emphasis supplied.)

GEICO's voicemails were reasonable clarifications of facts relevant to the offer. As part of its assessment of the offer, GEICO asked whether Cheek would make a recorded statement about the incident. Under OCGA § 9-11-67.1 (d), GEICO could make these inquiries without its attempts being deemed a counteroffer. And Cheek could not further limit the types of requests for clarification protected under subsection (d).

Our Supreme Court's construction of OCGA § 9-11-67.1 in *Grange Mut. Cas. Co. v. Woodard*, supra, 300 Ga. 848, is not to the contrary. *Grange's* construction of

15

other subsections of that statute was arguably narrower than the legislature had intended. See *Wright v. Nelson*, __ Ga. App. __ (856 SE2d 421) (Case No. A20A1868, decided March 11, 2021) (McFadden, C.J., concurring fully and specially); see also 2021 Georgia House Bill No. 714 (amending OCGA § 9-11-67.1 (b) (1) to add, "[u]nless otherwise agreed by both the offeror and the recipients in writing, the terms outlined in subsection (a) of this Code section shall be the only terms which can be included in an offer to settle made under this Code section," and amending OCGA § 9-11-67.1 (d) to add "if a release is not provided with an offer to settle, a recipient's providing of a proposed release shall not be deemed a counteroffer").

But the same cannot be said of *Grange*'s construction of the version of subsection (d) that was before it and is applicable here: "OCGA § 9-11-67.1 provides in subsection (d) that the recipient of a Pre-Suit Offer may seek 'reasonable clarification' on the topic of liens and other terms without transforming what would otherwise be an acceptance into a counteroffer." *Grange*, 300 Ga. at 857 (2) (b). So because OCGA § 9-11-67.1 (d) provided (and continues to provide) that *no* attempt to seek reasonable clarification constitutes a counteroffer, Cheek cannot use the

16

"master of the offer" principle to treat certain types of attempts to seek reasonable clarification as counteroffers.

2. *GEICO did not complete the acts necessary to accept the offer.*

Nevertheless, I am persuaded by Cheek's alternative argument that there was no settlement agreement to enforce because GEICO did not meet one of the terms of acceptance. GEICO did not deliver a release that fully complied with every term of the offer. Instead, GEICO delivered a proposed release that differed from the offer's requirements in certain respects. For example, Cheek's offer provided that the release could not contain "denials of liability" or "non-admissions of liability," but the proposed release delivered by GEICO stated that it "in no way prejudices the rights of [White] to deny liability" and that it "is not an admission of liability by [White]." Under this court's decision in *Pritchard v. Mendoza*, 357 Ga. App. 283, 288-289 (850 SE2d 742) (2020), GEICO's failure to deliver a fully compliant release meant that GEICO did not accept the offer.

I note that, as amended in the 2021 legislative session, OCGA § 9-11-67.1 (d) now provides, "if a release is not provided with an offer to settle, a recipient's providing of a proposed release shall not be deemed a counteroffer." 2021 Georgia House Bill No. 714. But for this case the former law controls. So no settlement

17

agreement was formed, and the trial court did not err in denying White's motion to enforce a settlement agreement. See *Pritchard*, 357 Ga. App. at 288-289.

3. *The prospective bad faith claim.*

As a consequence of our decision today, plaintiff Cheek can continue to pursue the potential bad faith claim underlying the contract formation issues directly before us. These bad faith claims usually come to us that way, as inchoate issues and motivating factors in actions to enforce settlement agreements. We rarely see an appeal that directly addresses the merits of a bad faith claim, such as the reasonability of an insurer's actions. But as detailed below, the language of the demand letter in this case directly implicates the question of the insurer's reasonability. And it appears that the demand letter is not unique to this case. Indeed, Cheek's counsel represented at oral argument that the demand letter at issue is a widely used form. And it appears similar to the language of the offer in *Pritchard v. Mendoza*, supra, 357 Ga. App. 283. For this reason, I think it appropriate in this writing to address the role of that letter in assessing the merits of a bad faith claim.

The offer before us specifies that it could be accepted only through compliance with its many requirements. Those requirements are buried in a 22-page, single-spaced letter that includes 16 footnotes and is filled with warnings and threats on a

18

wide variety of subjects. Among its requirements is delivery of a release that fully complies with numerous specifications set out in the text and footnotes of that letter. But the offer states that Cheek's attorney was unwilling to work with GEICO to ensure that the release was compliant.

Examination of the offer leads inescapably to the conclusion that an undertaking to extract and comply with all of its requirements would require hours of work over and above the effort normally necessary to finalize a settlement. And having expended that effort, GEICO could not be certain of success. Indeed, Cheek's attorneys responded to the attempted acceptance with a declaration that they deemed it a rejection — and didn't come up with their reasons until three months later.

Ordinarily good and bad faith are questions for a jury. But under some circumstances, summary judgment is in order. See *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 250 (779 SE2d 459) (2015) ("[a]n insurer . . . having any reasonable factual or legal ground" for its conduct can be entitled to summary judgment) (construing OCGA § 33-4-6, concerning insurer's liability for bad faith failure to pay loss covered by policy of insurance, and § 33-4-7, concerning insurer's liability for bad faith failure to investigate, adjust, and settle claim under motor vehicle liability policy, and citing case law construing those statutes).

"[T]hat the offeror lacked intent to settle the claim" has been found to be "objective evidence" of the absence of good faith. *Richardson v. Locklyn*, 339 Ga. App. 457, 460-461 (793 SE2d 640) (2016) (appeal from denial motion for attorney fees under Georgia's "offer of settlement statute," OCGA § 9-11-68).

The 22-page offer letter is compelling, if not dispositive, evidence of a lack of intent to settle the claim and so of bad faith. Per force it is not bad faith to reject an offer made in bad faith. (But rejection of a bad faith offer would not discharge an insurer's duty under *Holt* to accept a subsequent good faith offer.)